{¶ 1} This matter comes before the court on remand from the Supreme Court of Ohio directing this court to apply State v. Weideman,94 Ohio St.3d 501, 2002-Ohio-1484.
{¶ 2} On August 27, 1999, the Bainbridge Township Police stopped appellant, Joseph M. Dzubak, in the City of Solon. Appellant was charged with: driving under the influence of alcohol, in violation of R.C.4511.19(A)(1) and 4511.19(A)(3); driving with a suspended license, in violation of R.C. 4507.02(B); failure to control, in violation of R.C.4511.202; and leaving the scene of an accident, in violation of R.C.4549.02.
{¶ 3} On January 18, 2000, appellant filed a motion to suppress and/or dismiss. In support of his motion, appellant argued that the traffic stop occurred outside the jurisdictional boundaries of Bainbridge Township. On December 28, 1999, a hearing was held upon appellant's motion, which was subsequently denied.
{¶ 4} The transcript of the hearing is unavailable due to a tape recording error. As a result, the parties submitted an agreed statement of facts, pursuant to App.R. 9(D). The stipulated facts are as follows:
 {¶ 5} "1. An off-duty Bainbridge Township volunteer fireman thought he saw the mirror of appellant's truck strike a mailbox in Bainbridge Township, Ohio and observed the truck drive left of center[;]
 {¶ 6} "2. The citizen continued to follow the truck and called the Bainbridge Township Police from his vehicle[;]
 {¶ 7} "3. The citizen followed the vehicle out of Bainbridge Township and lost sight of it in the City of Solon, Cuyahoga County[;]
 {¶ 8} "4. The Bainbridge Township Police first sighted the vehicle on State Route 91 in Solon, Cuyahoga County, approximately 2-3 miles outside of Bainbridge Township[;]
 {¶ 9} "5. The defendant's vehicle turned into a gas station on State Route 91 in the City of Solon, and the Bainbridge Township Police followed no siren and no overhead lights activated[;]
 {¶ 10} "6. The officers observed light damage to the vehicle's passenger side mirror[;]
 {¶ 11} "7. When the defendant got out of the vehicle, he was stopped, detained, and arrested outside by the Bainbridge Township Police officer[;]
 {¶ 12} "8. The arrest of the defendant took place outside the geographical boundaries of Bainbridge Township[;]
 {¶ 13} "9. Prior to the stop, the defendant was never seen or observed by the Bainbridge Township Police while he was in Bainbridge Township[;]
 {¶ 14} "10. No warrant was obtained prior to the arrest."
{¶ 15} Eventually, appellant pleaded no contest and was: found guilty of driving under the influence of alcohol, in violation of R.C.4511.19(A)(1); fined $1,000, plus costs, with $250 suspended; sentenced to 180 days, with 170 suspended and three years probation; and, was given a 365 day license suspension, with no privileges. All other charges were dismissed at appellant's cost.
{¶ 16} The sole issue presented for our review is whether "[t]he trial court erred in failing to grant defendant's motion to suppress and/or dismiss." To determine whether the trial court erred in denying appellant's motion to suppress and/or dismiss, we must first determine whether the extraterritorial arrest was illegal, and, thus, a violation of appellant's Fourth Amendment right to be free from unreasonable search and seizure.
{¶ 17} In Weideman, the Supreme Court of Ohio held:
 {¶ 18} "[w]here a law enforcement officer, acting outside the officer's statutory territorial jurisdiction, stops and detains a motorist for an offense committed and observed outside the officer's jurisdiction, the seizure of the motorist by the officer is not unreasonable per se under the Fourth Amendment. Therefore, the officer's statutory violation does not require suppression of all evidence flowing from the stop." (Emphasis sic.) Weideman, supra, at syllabus.
{¶ 19} When determining whether an extraterritorial stop triggers the exclusionary rule, a court must determine, under the totality of the circumstances, whether the statutory violation rises to the level of a constitutional violation, i.e., whether the police officer had reasonable suspicion to stop and sufficient probable cause to arrest appellant. SeeWeideman, supra, at 504-505.
{¶ 20} The instant case does not involve an officer's observation of an offense committed outside his jurisdiction. Instead, it involves an extraterritorial stop and arrest based on an informant's tip that an offense had been committed in the officer's jurisdiction.
{¶ 21} "Where, as here, the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip." City of Maumee v. Weisner (1999),87 Ohio St.3d 295, 299. A court's determination as to whether the facts justified a reasonable suspicion will be limited to an examination of the weight and reliability due that tip. Id. Further, when determining the reliability of the tip, the court should consider the informant's veracity, reliability, and the basis of his or her knowledge. Id. In its assessment of these factors, the court should categorize the informant based on the following three classes of informants: "the anonymous informant, the known informant, (someone from the criminal world, who has provided previous reliable tips), and the identified citizen informant." Id. 300.
{¶ 22} For the reasons that follow, we conclude that, based on the stipulated facts presented for our review, the informant's tip did not give rise to a reasonable suspicion sufficient to justify a traffic stop. First, since the informant is only identified as "an off-duty Bainbridge Township volunteer fireman[1]," we conclude that the informant was anonymous. Second, the evidence states that the informant "thought" he saw the mirror of appellant's vehicle strike a mailbox, not that he actually observed a criminal act. Third, the evidence states that the informant "observed the truck drive left of center;" however, no explanation is given as to what law appellant had violated. Appellant could simply have been making a legal left turn. Lastly, the record is devoid of any indication that the Bainbridge Township Police observed appellant driving in a manner that would give rise to probable cause. Accordingly, we cannot conclude that the telephone informant's tip gave rise to a reasonable suspicion of criminal activity.
{¶ 23} Based on the foregoing, the judgment of the Chardon Municipal Court is reversed and the cause remanded.
{¶ 24} WILLIAM M. O'NEILL, P.J., concurs, DIANE V. GRENDELL, J., dissents with Dissenting Opinion.
[1] Although the record contains a praecipe requesting the Clerk of Courts subpoena "Bill Measures c/o Bainbridge Fire Dept. 543-9873" to appear at the hearing on the "motion to dismiss/suppress," the record is devoid of any evidence that: Bill Measures was, in fact, the informant; that he actually testified at the hearing; and, if he testified, the content of his testimony. From this record, we cannot conclude that Bill Measures was the off-duty Bainbridge volunteer fireman who called in the tip and/or that he testified at the hearing. Instead, we are limited to the facts presented in the Agreed Statement of Facts, wherein the parties simply identify the informant as "[a]n off-duty Bainbridge Township Volunteer fireman."